Christopher R. HILER, Appellant,

v.

DIRECTOR OF REVENUE, Respondent.

No. WD 59096.

Missouri Court of Appeals, Western District.

June 29, 2001.

Robert J. Hiler, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Curtis F. Thompson, Asst. Atty. Gen., Jefferson City, for respondent.

Before THOMAS H. NEWTON, P.J., JOSEPH M. ELLIS, and RONALD R. HOLLIGER, JJ.

NEWTON, Judge.

### Factual and Procedural Background

Christopher R. Hiler was arrested on February 5, 2000. After responding to a "check the welfare" call at approximately 6:30 p.m., the responding officers found Mr. Hiler slumped over the wheel of his car. The officers discovered that Mr. Hiler had passed out and was sleeping in his vehicle. An officer knocked on the driver's window of the vehicle for a moment, and Mr. Hiler looked over at the officers, knocked back at them from the inside of the car, and went back to sleep. Mr. Hiler eventually awoke and got out of the car after having trouble opening the door and expending a great deal of effort to pull himself out of the car. After a field sobriety test, the arresting officer conducted a breath analyzer test, and the results showed a blood alcohol content of 0.280%.

Mr. Hiler was issued a notice of suspension of his driver's license on the same date. He exercised his right to an administrative hearing under § 302.530[1] and was originally scheduled for a telephone hearing on March 20, 2000. Mr. Hiler later requested an "in person" hearing in Independence, Missouri, and notice was sent by the Department of Revenue (the Department) on March 31, 2000, notifying Mr. Hiler and his attorney of the administrative hearing scheduled for April 18, 2000.

On April 5, 2000, Mr. Hiler's attorney requested a continuance "since [he had] three separate cases set down for a jury trial on Monday, April 17, 2000." The Department sent a "New Hearing Notice" dated May 19, 2000, informing the parties that the cause was rescheduled for June 6, 2000. On May 24, 2000, Mr. Hiler's attorney requested another continuance due to "a number of cases set for jury trial on 6-5-00 in [the Circuit Court]." Again, the hearing was rescheduled, this time for 10:30 a.m. on July 19, 2000. On July 6, Mr. Hiler's attorney requested yet another continuance in writing, stating that he had a conflict with a murder trial he was defending from July 17 through July 20. Shortly thereafter, Mr. Hiler's attorney received a phone call from the Department's docket clerk informing him that she could not continue the case. Mr. Hiler's attorney responded, "well, there's no way [he] could be there" and asked her to "just go ahead and rule against [him], and then let [him] know—so [he] could file it in the circuit court." According to Mr. Hiler's attorney, her response was, "That'll be fine." The hearing officer entered a default judgment against Mr. Hiler when neither he nor his attorney appeared for the hearing.

Mr. Hiler filed a timely application for a trial *de novo* in the Jackson County Circuit Court on August 9, 2000.[2] After a hearing on the Director of Revenue's (the Director)

---

1. Unless otherwise indicated, all statutory references are to RSMo Supp.1996.

2. Mr. Hiler filed an "APPLICATION FOR HEARING UNDER SECTION 577.041 R.S.MO." Section 577.041 is applicable only where the licensee refuses to submit to a chemical test. *See Brown v. Dir. of Revenue,* 34 S.W.3d 166, 168–69 (Mo.App. W.D.2000). Here, however, Mr. Hiler gave a breath sample that produced a result of 0.280% approximately one hour after he was found passed out behind the wheel. Section 577.041, then, is obviously inapplicable. Also, as Mr. Hiler

motion to dismiss,[3] the circuit court granted the motion on September 18, 2000, and the petition was dismissed for lack of subject matter jurisdiction. In his sole point on appeal, Mr. Hiler contends that the circuit court erred in granting the Director's motion to dismiss because §§ 302.350 and 302.535 empower circuit courts with subject matter jurisdiction to hear appeals *de novo* of final administrative decisions suspending or revoking a person's driving privileges, in that the default judgment sustaining the administrative suspension of his Missouri driver's license was a final administrative decision. He contends that there was no further administrative remedy, and, therefore, the decision could be appealed *de novo* pursuant to the subject matter jurisdiction granted in §§ 302.530 and 302.535.

### Standard of Review

 In a contested case, it is a long-settled rule that administrative remedies must be pursued before turning to the courts for relief.[4] Where a party fails to pursue available administrative remedies, a court will, in most instances, lack subject matter jurisdiction.[5] A court that lacks subject matter jurisdiction can take no other action except dismiss, and any other action taken by such a court is null and void.[6] The circuit court's dismissal for lack of subject matter jurisdiction is a question of law which we review *de novo*.[7]

### Legal Analysis

 The circuit court ostensibly based its decision on the Eastern District's decision in *Marquart v. Director of Revenue*.[8] In *Marquart*, a licensee was issued a notice of suspension of his driver's license upon being arrested for driving while intoxicated.[9] After filing a timely request for an administrative hearing pursuant to § 302.530 and receiving notice of the hearing, neither he nor his counsel appeared, and the administrative hearing officer entered a default judgment against the licensee.[10] Thereafter, the licensee filed a petition for trial *de novo* in circuit court.[11] In a motion to dismiss, the Director asserted that the circuit court lacked juris-

---

was a resident of Kansas, review could not be had under § 302.311 because that avenue of review places venue in the circuit court of the county of his residence. Section 302.535 allows "[a]ny person aggrieved by a decision of the department" to file his or her petition in the circuit court of the county where the arrest occurred. Mr. Hiler was arrested by a Kansas City, Missouri, police officer, and his petition for review was filed in the Jackson County Circuit Court. Therefore, Mr. Hiler must have been asserting his right to judicial review under § 302.535.

3. Mr. Christopher Hiler's attorney, Robert Hiler, also represented Mr. Derrick Carr in *Carr v. Director of Revenue*, WD 59097, —— S.W.2d——. He handled both cases simultaneously, seeking continuances for the same dates and for the same reasons. As such, when he spoke to the docket clerk, he spoke in reference to both Mr. Carr's and Mr. Hiler's cases. Further, arguments before the

circuit court were made with regard to both Mr. Hiler and Mr. Carr.

4. *Farm Bureau Town and Country Ins. Co. of Mo. v. Angoff,* 909 S.W.2d 348, 352 (Mo. banc 1995).

5. *Willamette Indust., Inc. v. Clean Water Comm'n,* 34 S.W.3d 197, 201 (Mo.App. W.D. 2000); *see* § 536.100

6. *Bacon v. Dir. of Revenue,* 948 S.W.2d 266, 267 (Mo.App. E.D.1997).

7. *Ryan ex rel. Estate of Reece v. Reece,* 31 S.W.3d 82, 86 (Mo.App. W.D.2000).

8. 896 S.W.2d 716 (Mo.App. E.D.1995).

9. *Id.*

10. *Id.* at 717.

11. *Id.*

diction over the petition because of the licensee's failure to exhaust the administrative remedies available under § 302.530.[12] The Eastern District held that the licensee's unexcused failure to appear at the administrative hearing constituted a failure to exhaust administrative remedies.[13] The court reasoned that "merely requiring [the] licensee to request a hearing, without requiring [the] licensee to actually attend the hearing, contradicts the purposes for the judicial doctrine of exhaustion."[14]

In another context, we have adopted the Eastern District's reasoning in *Marquart*.[15] However, *Marquart* simply does not apply here. On March 3, 2000, the Department sent Mr. Hiler a letter, which provided him with four options regarding his license. The letter provided the following options:

[1.] I wish to forgo my hearing and have my suspension or revocation action begin at once upon your receipt of my request. THIS REQUEST MUST BE RECEIVED NO LATER THAN ONE DAY PRIOR TO THE DATE OF THE SCHEDULED HEARING.

[2.] I wish to submit my arguments in writing and any evidence by affidavit rather than having a telephone hearing. SUCH DOCUMENTS MUST BE RECEIVED BY [the docket clerk] NO LATER THAN ONE DAY PRIOR TO THE SCHEDULED HEARING DATE AND TIME.

[3.] I wish to continue my hearing from the above date and time so that I may appear in person at a hearing. ANY REQUEST FOR AN IN PERSON HEARING, RATHER THAN THE SCHEDULED HEARING, MUST BE POSTMARKED TO OR RECEIVED BY THE DEPARTMENT NO LATER THAN SEVEN (7) DAYS FROM THE DATE OF THIS NOTICE.

[4.] I want the hearing officer to review the documents on file with the Department and make a decision based on such documents. I have no additional evidence to submit. THIS REQUEST MUST BE RECEIVED BY [the docket clerk] NO LATER THAN ONE DAY PRIOR TO THE DATE OF THE SCHEDULED HEARING.

Mr. Hiler initially chose the third option, an in person hearing instead of a telephone hearing. Ultimately, he requested a continuance for the hearing on July 19, and the request was denied. At the hearing on the Director's motion to dismiss Mr. Hiler's petition for trial *de novo*, Mr. Hiler's attorney stated that he received a call from the docket clerk, and she said, "I can't continue it." He responded, "well, there's no way [he] could be there" and asked her to "just go ahead and rule against [him], and then let [him] know—so [he] could file it in the circuit court." According to Mr. Hiler's attorney, her response was, "That'll be fine." Elaborating further on this conversation, Mr. Hiler's attorney explained in his written arguments presented to the circuit court that he had asked the docket clerk "to indicate in their file, that in looking over the documents, they ruled against both of the Petitioner's [sic], so that a pleading could be

---

12. *Id.*

13. *Marquart*, 896 S.W.2d at 718.

14. *Id.* at 717.

15. *See Doody v. Dept. of Soc. Serv.*, 993 S.W.2d 563, 566–67 (Mo.App. W.D.1999).

filed in the Circuit Court where the parties were charged with a DWI...."[16] At that time in the process, Mr. Hiler's attorney was implicitly seeking to exercise the fourth option by asking "the hearing officer to review the documents on file with the Department and make a decision based on such documents."[17] Clearly, he never intended to abandon the administrative hearing or the right to seek relief from the suspension.

Nonetheless, the hearing officer entered a default judgment against Mr. Hiler when he was not present for the hearing. There is a difference between agreeing to a hearing date and simply not showing up, as in *Marquart*, and trying to get to the hearing but being unable to do so and requesting instead that the matter be submitted on the records. When someone does not show up, it reasonably appears that they have decided to abandon their effort to seek relief from the suspension. Here, however, Mr. Hiler made it clear that he had no intent to abandon and wanted to preserve the right to go to court. The Director knew that Mr. Hiler was not coming and should have understood that what he wanted was to allow submission on the records so that he could then apply for a trial *de novo*.

We note that there is generally a distinction between a default judgment and a judgment rendered after a party has filed pleadings but failed to appear. Where the judgment is taken after a party files pleadings but does not appear, it is considered a judgment on the merits.[18] Here, the hearing officer entered a default judgment after Mr. Hiler requested a hearing, requested a continuance, and was denied a continuance. "The judgment was not analogous to one entered simply for failure to answer, for no answer was required here."[19] Thus, the label of "default judgment" is a misnomer under these circumstances.[20] Further, because he requested that the hearing officer review the documents on file, the Director must have met his burden of proving a prima facie case under §§ 302.505 and 302.535.[21] Accordingly, because the judgment was actually a judgment on the merits, Mr. Hiler is correct in his assertion that he *did* in fact exhaust his administrative remedies. With the hearing officer issuing a final judgment on the merits, Mr. Hiler exhausted his administrative remedies, and the circuit court therefore had jurisdiction to entertain Mr. Hiler's petition for a trial *de novo*.

### Conclusion

Therefore, the judgment of the circuit court dismissing Mr. Hiler's petition for a

16. "Petitioner's" is in reference to Mr. Hiler and Mr. Carr.

17. *See* 12 CSR 10–24.030(7).

18. *Cotleur v. Danziger*, 870 S.W.2d 234, 237 (Mo. banc 1994); *Harris v. Desisto*, 932 S.W.2d 435, 441 (Mo.App. W.D.1996).

19. *G.H. Kursar, D.O., Inc. v. Fleischer*, 602 S.W.2d 870, 873 (Mo.App. E.D.1980); *see Herrin v. Straus*, 810 S.W.2d 593, 598 n. 2 (Mo.App. S.D.1991).

20. *See Ozark Mountain Timber Prod., Inc. v. Redus*, 725 S.W.2d 640, 644 (Mo.App. S.D. 1987).

21. The Director must show by a preponderance of the evidence that: (1) the person was arrested upon probable cause for driving while intoxicated or for violating an alcohol-related offense; and (2) at the time of the arrest, the person had an alcohol concentration of at least .10% by weight. *Smith v. Dir. of Revenue*, 13 S.W.3d 700, 704 (Mo.App. W.D.2000). Otherwise, we might be addressing an issue similar to what our Supreme Court addressed recently in *Wampler v. Dir. of Revenue*, No. SC83086, 2001 WL 410500 (Mo. banc April 24, 2001).

trial *de novo* is reversed and remanded for further proceedings consistent with this opinion.

JOSEPH M. ELLIS and RONALD R. HOLLIGER, JJ., concur.